### Liability for Prisoner's Care

JOHN D. KILLIAN, 3d, FRANK P. LAWLEY, JR., Deputy Attorneys General, and THOMAS D. MCBRIDE, Attorney General, May 16, 1958.—Your office has requested an opinion from this department interpreting the Act of May 17, 1957, P. L. 161, sec. 1, 19 PS §1234.1. You state the following facts as giving rise to your request for an opinion:

On April 30, 1948, one Alfred J. Nardi, Jr., was committed by the Dauphin County Courts to the Pennsylvania Institution for Defective Delinquents at Huntingdon, Huntingdon County. While imprisoned at the Pennsylvania Institution for Defective Delinquents, Nardi committed a murder for which he was tried, convicted and sentenced by the Huntingdon County Courts, on November 19, 1954, to life imprisonment. He is presently confined in the Western State Penitentiary, Pittsburgh.

From November 19, 1954, to September 30, 1957, the Huntingdon County Commissioners were billed by and paid your department for the maintenance of Nardi at Western State Penitentiary in the amount of $2,465.77. On October 31, 1957, your department billed the Dauphin County Commissioners in the amount of $2,465.77 for the period November 19, 1954, to September 30, 1957, and credited Huntingdon County for an overpayment in error. Since September 30, 1957, Dauphin County has been and continues to be billed monthly for the maintenance of Nardi.

The solicitor to the County Controller of Dauphin County and the solicitor to the Commissioners of Huntingdon County have rendered legal opinions as to which county is liable for Nardi's maintenance since November 19, 1954, and each has concluded that the other county is liable.

We have read the opinions of both solicitors, review-

ed the applicable legal authorities and concluded that your department has acted properly in billing Dauphin County for Nardi's maintenance and crediting Huntingdon County with an overpayment in error.

The Act of May 17, 1957, supra, 19 PS §1234.1, provides:

"Where a person is confined in a State penal or correctional institution either by virtue of his sentence pursuant to his conviction or plea of guilty to a criminal charge, or by virtue of a commitment issued by any court of the Commonwealth having jurisdiction, and while so confined any such person commits a criminal offense and is subsequently convicted or enters a plea of guilty thereto, expenses of keeping such person in any State penal or correctional institution pursuant to such subsequent conviction or plea of guilty shall be borne by the county in which the person was originally convicted."

This act must be read in conjunction with two other provisions to reveal the legislative pattern for the payment of costs of maintaining prisoners.

1. The Act of April 25, 1929, P. L. 694, sec. 1, 61 PS §344, provides that the cost of maintaining convicts in State penitentiaries shall be paid to the Department of Revenue by the respective counties in which the persons were convicted.

2. The Act of July 22, 1913, P. L. 912, secs. 2-3, as amended, 19 PS §§1233-1234, provides, inter alia, that the costs of trying and maintaining an escaped prisoner for the escape or for any crime committed after escaping and before apprehension shall be borne by the county from which the prisoner was originally committed. It also provides that the cost of trying a prisoner for a crime committed on the grounds of the institution shall be borne by the county of original commitment, but contains no provision regarding the maintenance of such prisoner under the new sentence.

Read together, these provisions create a scheme under which the county whose court originally sentences must pay (1) for the maintenance of the prisoner under sentence for such original conviction, (2) for the costs in connection with a prosecution and conviction for an escape and for crimes committed after the escape and before apprehension, and (3) for the trial and maintenance of the prisoner for a crime committed while confined in a State penal institution under the original conviction or conviction resulting from an escape.

The solicitor to the Dauphin County Controller relies upon the above provisions and takes the position that the Act of May 17, 1957, supra, is not retroactive, that under the Act of April 25, 1929, supra, the *maintenance* of a prisoner who has been convicted for an offense committed while confined in a State penal institution must be borne by the county from which the person is sentenced for such offense and that, therefore, Nardi's maintenance expense is properly chargeable to Huntingdon County.

We agree that the Act of May 17, 1957, supra, is not retroactive [1] in the sense that it would allow recovery of costs incurred prior to its passage. We also agree with the interpretation given the Act of April 25, 1929, supra. However, the Act of April 25, 1929, supra, does not govern the instant case. This act supplanted section 9 of the Act of April 23, 1829, P. L. 341, but made no substantive change in the rule as to which county must bear the costs of maintenance of prisoners.

In 1893, however, the legislature made a specific exception to the rule of the Act of April 23, 1829, supra, by providing in the Act of June 3, 1893, P. L. 280, sec. 1, 61 PS §501:

---

[1] The Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 56, 46 PS §556.

"Whenever any inmate of the Pennsylvania Industrial Reformatory at Huntingdon, not having been sentenced thereto by the court of Huntingdon county, shall be convicted in either of the courts of Huntingdon county of any misdemeanor or felony committed while an inmate of the said reformatory, the costs and expenses of trying such convicted inmate, and of his maintenance, after conviction and sentence either to the county prison of Huntingdon county or either of the penitentiaries of the state, shall be paid by the county from which the said convicted inmate was sentenced."

The Pennsylvania Industrial Reformatory at Huntingdon is now the Pennsylvania Institution for Defective Delinquents, the same institution in which Nardi was incarcerated at the time he committed the crime of murder.

The Act of April 25, 1929, supra, did not repeal,[2]

---

[2] Reference to the Act of June 3, 1893, supra, was made by the legislature in 1937 in section 2 of the Act of May 25, 1937, P. L. 808, 61 PS §541-2, which provides: "The management and operation of the Pennsylvania Institution for Defective Delinquents and the care and maintenance and employment of persons detained therein, shall be the function of the Board of Trustees of Pennsylvania Industrial School (hereinafter called the board) and the Department of Welfare in the manner provided by the Administrative Code of 1929, and its amendments: Provided, That said board shall thereafter be known as the Board of Trustees of Pennsylvania Institution for Defective Delinquents. The compensation of all officers and employes and all other expenses in connection with the care and maintenance of persons detained in said institution, shall be paid from appropriations made to the Department of Welfare for such purposes, but the Commonwealth shall be reimbursed for all such expenditures by the respective counties, from which such persons were committed, in the same manner and to the same extent *as is now provided by law* in the case of persons committed to the Pennsylvania Industrial School at Huntingdon." (Italics supplied.)

alter or amend the Act of June 3, 1893, supra, and, therefore, the latter provision is still effective and controls the instant case. Nor is there any conflict between the Act of June 3, 1893, supra, and the Act of April 25, 1929, supra, which would require the later enactment to prevail.[3]

The Act of June 3, 1893, supra, must be regarded as a special provision and construed as an exception to the general provision of the Act of April 23, 1829, supra, which was supplanted by the Act of April 25, 1929, supra. The Act of June 3, 1893, supra, therefore must be read as an integral part of the broad legislative pattern of designating those counties which must bear the costs of maintenance of prisoners. The Act of May 17, 1957, supra, simply makes applicable to all State penal and correctional institutions the rule previously applicable to the institution at Huntingdon.[4]

We are, therefore, of the opinion and you are accordingly advised that:

(1) By virtue of the Act of June 3, 1893, supra, the expenses of Nardi's maintenance in the amount of $2,-465.77 for the period November 19, 1954, to September 30, 1957, were properly billed to the Dauphin County Commissioners, and Huntingdon County was properly credited for an overpayment in error in a like amount. Since September 30, 1957, Dauphin County has been and must continue to be liable for Nardi's maintenance.

(2) The Act of June 3, 1893, supra, was not repealed, altered or amended by the Act of April 25, 1929, supra, which supplanted the Act of April 23,

---

[3] See Statutory Construction Act of May 28, 1937, sec. 63, 46 PS §563.

[4] A similar provision with respect to the State Industrial Home for Women is contained in section 22 of the Act of July 25, 1913, P. L. 1311, 61 PS §573.

1829, supra. The 1893 provision must be treated as an exception to the general rule of the 1829 provision.

(3) The Act of May 17, 1957, supra, provides that whenever any inmate of a State penal institution commits a crime while so imprisoned, and is subsequently convicted, the cost of maintenance of such inmate pursuant to such conviction is to be charged to the county which originally committed the inmate and not the county in which he was subsequently tried and convicted.